## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA,
LOCAL 894, *et al.*,

        **Plaintiffs,**

        **v.**

WRIGHT TRAFFIC CONTROL,
INC., *et al.*,

        **Defendants.**

        **Case No. 2:18-cv-264**
        **JUDGE SARAH D. MORRISON**
        **Magistrate Judge Chelsey M. Vascura**

### OPINION AND ORDER

There are currently two pending motions to dismiss the Amended Complaint.  Defendant Wright Traffic Control, Inc. ("Wright Traffic" or "WTC") filed its Motion to Dismiss on February 21, 2019.  (ECF No. 32).  Defendant W.D. Wright Contracting, Inc. ("W.D. Wright" or "WDWC") similarly moved to dismiss the Amended Complaint on February 21, 2019.  (ECF No. 33).  Plaintiffs Laborers' International Union of North America, Local 894 ("Local 894"), Laborers' Internal Union of North America, Local 423 ("Local 423"), and Laborers' Internal Union of North America, Local 265 ("Local 265") (collectively, "Plaintiffs" or the "Unions") jointly responded to both motions.  (ECF No. 38).  Both Defendants replied.  (*See* ECF Nos. 43; 44).  Accordingly, this matter is ripe for review.  For the reasons stated herein, Defendants' Motions are **GRANTED**.

### I.

Plaintiffs initiated this action on March 27, 2018, with the filing of a two-count Complaint against Wright Traffic and W.D. Wright, seeking: 1) declaratory judgment; and 2) damages for breach of labor contracts.  (Compl. [ECF No. 1]).  Defendants Wright Traffic and W.D. Wright

(collectively "Defendants") moved to dismiss the Complaint. (ECF No. 14; ECF No. 15). Prior to a ruling on these motions, however, Plaintiffs filed an Amended Complaint. (*See* Am. Compl. [ECF No. 20]).

In the two-count Amended Complaint against Wright Traffic and W.D. Wright,[1] Plaintiffs seek: 1) declaratory judgment; and 2) specific performance to compel arbitration. (Am. Compl. ¶¶ 68–74). Defendants have moved to dismiss the Amended Complaint asserting the Court lacks subject matter jurisdiction over Plaintiffs' claims and that Plaintiffs have failed to state a claim upon which relief can be granted. (WTC Mot. to Dismiss [ECF No. 32]; WDWC Mot. to Dismiss [ECF No. 33]). As this matter is before the Court on a Rule 12 Motion, the Court takes the factual allegations asserted in the Amended Complaint, and the exhibits attached to the Amended Complaint, as true. Those facts are as follows.

Plaintiffs are labor organizations affiliated with the Laborers' International Union of North America. (*Id.* at ¶¶ 7–9). Local 894 is based out of Akron, Ohio; Local 423 maintains its principal place of business in Columbus, Ohio; and Local 265 operates out of Cincinnati, Ohio. (*Id.*). Each Plaintiff is a labor organization as defined under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5), and incorporated into the Labor Management Relations Act ("LMRA") as 29 U.S.C. § 142(3). (*Id.* at ¶ 13).

Defendants are both Pennsylvania corporations that "provide construction site traffic control services to customers including contracts and public and private utilities" and operate within the state of Ohio. (Am. Compl. ¶¶ 2, 3, 12). Plaintiffs allege that Defendants "hold themselves out to the public as one business through their marketing, trademarks, servicemarks,

---

[1] Plaintiffs also brought both claims in the Amended Complaint against Wright of Ohio, LLC ("Wright of Ohio" or "WOO"). (*See* Am. Compl. ¶ 4). All claims against Wright of Ohio, LLC, however, were dismissed on November 13, 2019. (*See* ECF No. 47; *see also* ECF No. 46).

social media posts, and public relations." (*Id.* at ¶ 13). Further, Plaintiffs assert that Defendants "essentially operate as one business" as Defendants use "the same personnel, policies, equipment, and vehicles, provides construction site traffic control services to the same or similar customers." (*Id.* at ¶ 14).

Wright Traffic began doing business in Ohio in or around 2016, but did not receive its Foreign For-Profit Corporation License from the Ohio Secretary of State until March 2018. (*Id.* at ¶ 16). A substantial amount of Wright Traffic's work in Ohio was performed pursuant to pre-hire collective bargaining agreements ("CBAs") with the Laborers' International Union of North America, Laborers' District Council of Ohio, and affiliated local unions Local 894, Local 423, and Local 265. (*Id.* at ¶ 17). Wright Traffic and the Unions' CBAs "cover, among other things, construction site traffic control work performed for various types of customers and were entered into under Section 8(f) of the National Labor Relations Act ("NLRA")[.]" (*Id.* at ¶ 18).

On or about February 10, 2016, Wright Traffic signed a letter of assent to the CBA entitled "the Ohio Highway-Heavy-Municipal-Utility State Construction Agreement" (the "Heavy Highway Agreement"). (*Id.* at ¶ 19). The Heavy Highway Agreement identified the Unions as intended third party beneficiaries. (*Id.*). No party to this agreement has terminated the Heavy Highway Agreement as it relates to Wright Traffic. (*Id.* at ¶¶ 22–23).

Wright Traffic has also signed letters of assent to other CBAs in which the Unions were identified as third-party beneficiaries, including: "the National Pipe Line Agreement" and "the National Distribution Agreement." (*Id.* at ¶ 24). No authorized party to these agreements has terminated either agreement as they relate to Wright Traffic. (*Id.* at ¶¶ 27–28, 31–32). And Plaintiffs acknowledge Wright Traffic "is the only one of Defendants' operations that has actually *signed* the CBAs." (*Id.* at ¶ 33) (emphasis in original).

3

Since 2016, W.D. Wright has "performed construction site traffic control work in or around Ohio," but W.D. Wright's laborers, despite performing "the same traffic control work as [Wright Traffic's] laborers, are not hired, employed, and paid under the pre-hire CBAs."  (*Id.* at ¶ 34). Plaintiffs submit that this matter "is about determining whether these . . . nominally separate companies—one *signed* to the pre-hire CBAs and the other[] not—can be considered a 'single employer' bound through *conduct* to the pre-hire CBAs."  (*Id.* at ¶ 36).  Thus, Plaintiff asks the Court to determine whether, although W.D. Wright did not sign the CBAs, it is nonetheless "bound to the terms of the Heavy Highway Agreement . . ., National Pipe Line Agreement . . ., and National Distribution Agreement" (collectively the "CBAs") by virtue of its "*conduct* as a 'single employer' with" Wright Traffic.  (*Id.* at ¶ 39) (emphasis in original).

Plaintiffs allege that both Defendants "are (and have been) commonly controlled and owned by the Wright family" since 2016, when Wright Traffic entered into the CBAs.  (*Id.* at ¶ 41).  Further, Brian D. Wright is the President and co-owner of both Wright Traffic and W.D. Wright.  (*Id.* at ¶ 44).  And Luke Wright is the Vice President and co-owner of both Defendants. (*Id.* at ¶ 46).  Plaintiff also submits that W.D. Wright's LinkedIn profile discusses the operations of Wright Traffic.  (*Id.* at ¶ 47).  Furthermore, W.D. Wright and Wright Traffic have had common management personal, Field Supervisors, and Traffic Control Supervisors.  (*Id.* at ¶¶ 49, 51, 52). Thus, Plaintiffs submit that "[a]ll Defendants' operations are, and have been functionally interrelated starting in 2016—when the pre-hire CBAs were signed[.]"  (*Id.* at ¶ 53).

Additionally, the Defendants operate out of the same places of business in Beaver, Pennsylvania and the greater Akron, Columbus and Cincinnati areas in Ohio.  (*Id.* at ¶ 54).  And both W.D. Wright and Wright Traffic use "a common employee list such that Defendant WTC's employees performing construction site traffic control services could (and would) be requested to

work on" W.D. Wright's jobs.  (*Id.* at ¶ 55).  If a Wright Traffic employee rejected a W.D. Wright job assignment, Wright Traffic "would log that rejection as a 'turn down' and would remove that employee from the schedule" to discipline him or her.  (*Id.* at ¶ 56).

Other instances that Plaintiffs allege support the conclusion that W.D. Wright and Wright Traffic are a single employer include:  Wright Traffic employees performing work alongside W.D. Wright employees; both Defendants' management personnel's email ending with the domain "@wdwright.com"; Defendants using the same process/personnel to dispatch employees to jobs; both Defendants use of the same process/personnel for employees to call off of work; Defendants' use of the same forms to hire employees and for orientation purposes; Defendants' use of the same forms for employees to log hours and location of work; and both Defendants use the same trademarks, service marks, and marketing materials.  (*See id.* at ¶¶ 57–63).

Plaintiff further allege that W.D. Wright are not complying with the CBAs, including the following:

a.  failing to pay proper wages, including overtime and premium wages (i.e., Defendant[] WDWC . . . pay[s] less than the hourly rates set by the CBAs); [and]

b.  failing to pay fringe benefits (i.e., Defendant[] WDWC . . . do[es] not pay the hourly rates set by the CBAs at all); and

(*Id.* at ¶ 67).  Based upon these allegations, Plaintiffs seek: 1) declaratory judgment that W.D. Wright and Wright Traffic are a single employer and, thus, W.D. Wright is bound by the pre-hire CBAs; and 2) specific performance to compel arbitration.  (*See id.* at ¶¶ 68–74).

Defendants have each filed a Motion to Dismiss asserting: 1) the Court lacks subject matter jurisdiction over the present dispute; and 2) Plaintiffs have failed to assert a claim upon which relief can be granted.  (*See generally* WTC Mot. to Dismiss; WDWC Mot. to Dismiss).  Defendants assert the Court either lacks jurisdiction or should abstain from exercising jurisdiction over the

present matter as it presents a primarily representational dispute, which falls within the purview of the National Labor Relations Board ("NLRB").  (WTC Mot. to Dismiss at 5–15; WDWC Mot. to Dismiss at 7–15).  Defendants further argue, even if the Court does have jurisdiction over the dispute, Plaintiffs have nonetheless failed to sufficiently allege a claim for relief.  (WTC Mot. to Dismiss at 15–16; WDWC Mot. to Dismiss at 4–7).

Plaintiffs oppose Defendants' motions asserting that the Court has jurisdiction over their claims as the claims are primarily contractual.  (Response at 2–9) [ECF No. 38].  Alternatively, Plaintiffs ask that the Court defer from deciding whether it has jurisdiction over this suit until the parties can engage in discovery.  (*Id.* at 10).  Plaintiffs largely fail to address Defendants' Rule 12(b)(6) motions but submit that if the Court finds the factual allegations contained in the First Amended Complaint to be insufficient, it should allow Plaintiffs to submit a Second Amended Complaint.  (*Id.* at 11).

## II.  SUBJECT MATTER JURISDICTION

### A.  Standard of Review

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Federal courts have subject matter jurisdiction in civil actions if: 1) the action arises under federal law, *see* 28 U.S.C. § 1331 (federal question jurisdiction); or 2) the action is between citizens of different states where the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332 (diversity jurisdiction).

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction.  Without subject matter jurisdiction, a federal court lacks authority to hear a case.  *Thornton v. S.W. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990).  Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and

factual attacks.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the trial court therefore "takes the allegations of the complaint as true."  *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction.  *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

A factual attack is a challenge to the factual existence of subject matter jurisdiction.  No presumptive truthfulness applies to the factual allegations.  *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Carrier Corp. v. Outukump Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)).

## B.    Discussion

Defendants facially attack the sufficiency of Plaintiffs' Amended Complaint.  (*See* WTC Mot. to Dismiss at 3; WDWC Mot. to Dismiss at 7–8).  Both Defendants assert that this Court lacks subject matter jurisdiction over Plaintiffs' claims as those claims are primarily representational in nature and, thus, within the exclusive jurisdiction of the NLRB.  (WTC Mot. at 3; WDWC Mot. at 2).  Plaintiffs disagree with Defendants' characterization of the Amended Complaint and submit that this Court has jurisdiction as their claims are primarily contractual in nature and not representational.  (Response at 2–9).

Section 301(a) of the Labor-Management Relations Act ("LMRA") permits federal district courts to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees."  29 U.S.C. § 185(a).  When a dispute is primarily representational in nature, however, it falls within the execusive jurisdiction of the NLRB.  *See Diponio Const. Co. v. Int'l Union of Bricklayers & Allied Craftworkers, Local 9*, 687 F.3d 744, 749 (6th Cir. 2012)

(citing *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959)).

Whether a dispute is representational or contractual in nature is often a close determination. The Sixth Circuit has "identified two scenarios in which a dispute will be treated as 'primarily representational'" and thus within the exclusive jurisdiction of the NLRB. *DiPonio*, 687 F.3d at 750 (quoting *Int'l Bhd. of Elec. Workers, Local 71 v. Trafftech, Inc.*, 461 F.3d 690, 695 (6th Cir. 2006)). The first scenario is "where the [NLRB] has already exercised jurisdiction over a matter and is either considering it or has already decided the matter[.]" *Id.* (citing *Trafftech*, 461 F.3d at 695). The second scenario is "where the issue is an 'initial decision in the representation area.'" *Id.* (quoting *Trafftech*, 461 F.3d at 695 (quoting *Hotel & Rest. Emps. Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 565 (2d Cir. 1993)) (brackets omitted). The latter category is comprised of situations where a court—and not the NLRB—is asked to decide whether a person or group of persons is a proper collective bargaining representative in the first instance. *Id.* In other words, "where a dispute is brought under Section 301 of the [LMRA], the district court properly defers to the primary jurisdiction of the Board if (1) the Board has exercised jurisdiction over the dispute involving representation, or (2) resolving the dispute requires an initial decision in the representation area." *DHSC, LLC v. Cal. Nurses Ass'n /Nat'l Nurses Org. Comm., AFL-CIO*, 700 F. App'x 466, 471 (6th Cir. 2017) (citations omitted).

The parties have not proffered that this matter, or a related matter, is currently pending before the NLRB. Thus, the Court is called to determine whether resolving the case at bar would require the Court to make an initial decision in the representation area.

Both Defendants draw the Court's attention to two decision from this Court: *Laborers' Dist. Council of Ohio v. Roadsafe Traffic Sys., Inc.*, No. 2:17-cv-99, 2018 WL 1327210 (S.D. Ohio

8

Mar. 14, 2018) ("*Roadsafe I*"), *vacated by Laborers' Dist. Council of Ohio v. Roadsafe Traffic Sys., Inc.*, No. 2:17-cv-99, 2019 WL 2332344 (S.D. Ohio Jan. 17, 2019) ("*Roadsafe II*"), and *JBM, Inc. v. Prod. Workers Union, Local 707*, 454 F. Supp. 2d 680 (S.D. Ohio 2006).  Defendants submit that these prior decisions establish that the dispute before this Court is primarily representational in nature, not contractual.  (WTC Mot. to Dismiss at 7–8; WDWC Mot. to Dismiss at 8–10). Plaintiffs aver that the case at bar is contractual and assert that, as W.D. Wright and Wright Traffic are alleged to be single employers, the Court has jurisdiction over this dispute.   (*See* Response at 5–6).

Here, Plaintiffs ask that the Court declare "that one or more of Defendants WDWC . . . and WTC are employers bound by the pre-hire CBAs under the 'single employer' doctrine."  (Am. Compl. ¶ 71).  Yet, Plaintiffs admit that W.D. Wright is not a signatory to any of the CBAs.  (*Id.* at ¶ 33).[2]  Thus, Plaintiffs ask this Court to determine the scope of Plaintiffs' representation of W.D. Wright's employees, something that is within the purview of the NLRB.  *See* 29 U.S.C. 159(b); *see also Marion Power Shovel*, 230 NLRB 576, 577–78 (1977) (holding that "[t]he determination of questions of representation, accretion, and appropriate unit do[es] not depend upon contract interpretation but involve[s] the application of statutory policy, standards and criteria.  These are matters for decision of the Board rather than an arbitrator.").  In reaching the conclusion that Plaintiffs' Amended Complaint presents primarily representational issues, the Court is guided by its previous decision in *Roadsafe I*.

In *Roadsafe I*, the Court granted the defendant's motion to dismiss for lack of subject matter jurisdiction, finding that "representational issues predominate[d] in th[at] dispute," and that

---

[2] "Defendant WTC, to Plaintiffs' knowledge, is the only one of Defendants' operations that has actually *signed* the CBAs."  (Am. Compl. ¶ 33) (emphasis in original).

plaintiff could not "overcome this reality by 'simply referring to the claim as a breach of contract.'" 2018 WL 1327210, at *4 (quoting *Paper, Allied Indus., Chem. & Energy Workers Int'l Union v. Air Prod. & Chems, Inc.*, 300 F.3d 667, 675 (6th Cir. 2000) (citing *Int'l Bhd. of Boilermakers, Forgers & Helpers, AFL-CIO v. Olympic Plating Indus., Inc.*, 870 F.2d 1085, 1089 (6th Cir. 1989))). In reaching its conclusion, the *Roadsafe I* Court found that the plaintiffs' "characterization of the issues" as primarily contractual due to their seeking of contractual relief "presupposes that a valid collective bargaining relationship existed between the parties" and that the "facts of th[at] case raise several potential issues pertaining to the question of whether [p]laintiffs indeed represented RoadSafe employees at the time of the alleged breach of the CBA." *Id.*

The issues that the *Roadsafe I* Court addressed are present in this case. Plaintiffs concede that W.D. Wright is not a signatory of the CBAs. (Am. Compl. ¶ 33). Thus, by asking the Court to declare that W.D. Wright is bound by the CBAs, Plaintiffs necessarily ask the Court to make a representational decision. Plaintiffs assert that the Court should not rely on *Roadsafe I* for two reasons, both of which are unpersuasive. First, Plaintiffs submit that because *Roadsafe I* was vacated it is nonprecedential. (Response at 6). And while Plaintiffs are correct, *Roadsafe I* was vacated by *Roadsafe II*, the *Roadsafe I* Court's reasoning remains persuasive because the opinion was vacated upon the request of the parties, not by order of the Sixth Circuit or upon reconsideration of the district court. *See Roadsafe II*, 2019 WL 2332344, at *1.[3]

---

[3] The pertinent part of the Court's Order vacating its previous opinion is as follows:

This matter came before the Court upon the agreed upon motion of the parties requesting the Court to confirm an exception contained within Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, applies; vacate the underlying *Opinion and Order* (Doc. 26) and associated *Judgment* (Doc. 27); and dismiss all claims with prejudice. Section 3-2 of the LMRA prohibits certain

Plaintiffs assert that this matter is contractual and not representational because W.D. Wright—though not a signatory to the CBAs—is bound by the CBAs under the single employer doctrine. (Response at 7–9). In making this assertion, Plaintiff relies on: *Serv., Hosp., Nursing Home & Pub. Emps. Union, Local No. 47, Affiliated with the Serv. Emps. Int'l Union, AFL-CIO, CLC v. Commercial Prop. Servs., Inc.*, 755 F.2d 499 (6th Cir. 1985); *Local No. 6, Bricklayers, Masons & Plasterers Int'l Union of Am. v. Boyd G. Heminger, Inc.*, 483 F.2d 129 (6th Cir. 1973); and *Distillery, Wine & Allied Workers Int'l Union, Local Union No. 32, AFL-CIO v. Nat'l Distillers & Chem. Corp.*, 894 F.2d 850 (6th Cir. 1990).

Plaintiffs ask the Court to extend a collective bargaining agreement to a non-signatory. However, even if the Court were to agree with Plaintiffs' assertion that W.D. Wright and Wright Traffic are a single employer, it does not necessarily follow that that the Court has the power to declare that W.D. Wright is bound by the terms of the CBAs. *See Bhd. of Teamsters, Local No. 70 v. Cal. Consolidators, Inc.*, 693 F.2d 81, 83 (9th Cir. 1982), *cert. denied*, 469 U.S. 887 (1984);[4]

---

financial transactions between labor organizations like Plaintiffs and employers like Defendant, unless certain exceptions apply. 29 U.S.C. § 186(a)(b). On such exception applies to payments "in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress." 29 U.S.§ 186(c)(2).

Having considered the parties' motion and the entire record, including the representations of counsel, the Court is of the opinion, and so finds, that the settlement exception contained within Section 302 of the LMRA applies. *See* 29 U.S.C. § 186(c)(2).

*Roadsafe II*, 2019 WL 2332344, at *1.

[4] *Cal. Consolidators* Court found:

A district court may decide under § 301 whether two companies constitute a single employer. *Metropolitan Detroit Bricklayers District Council, International Union of Bricklayers v. J.E. Hoetger & Co.*, 672 F.2d 580, 583 (6th Cir. 1982). But a single employer conclusion fails to determine that the employees form a single or an appropriate bargaining unit. *NLRB v. Don Burgess Construction Corp.*, 596

11

*B&B Indus., Inc.*, 162 NLRB 832, 834 (1967) (finding that not "every contract made by either covers all the employees of both[,]" despite the entities being a single employer); *A-1 Fire Protection*, 273 NLRB 964, 968 (1984) (stating that two entities "did not constitute a single appropriate unit although they constituted a single employer[,]" and noting that such finding had been affirmed by the D.C. Circuit Court). Thus, even assuming *arguendo* that Wright Traffic and W.D. Wright are a single employer, such a finding would not *per se* mean that W.D. Wright is bound by the terms of the CBAs. Such a conclusion implicates the formation and scope of a collective bargaining relationship, and such determinations fall within the NLRB's jurisdiction and expertise. The Court's decision to defer this decision to the NLRB is not contradictory to the precedent cited by Plaintiffs, as such precedent does not preclude the Court from abstaining from deciding on the scope of the representational question before it and to defer such matter to the NLRB.

Accordingly, it is only after the NLRB has decided on the representational issues presented in this case—i.e., whether W.D. Wright is bound by the CBAs—can the trier of fact determine the relatively minor contractual issue before the Court. Thus, relying on the framework of *DiPonio*, and this Court's prior decision in *Roadsafe I*, the Court finds that the representational issues predominate this matter. As such, the Court declines to adjudicate the § 301 action before it and defers such determination to the NLRB.

---

F.2d at 386; *accord Road Sprinkler Fitters Local 669 v. NLRB*, 676 F.2d 826, 830 (D.C. Cir. 1982); *NLRB v. Big Bear Supermarkets No. 3*, 640 F.2d 924, 931 n.7 (9th Cir.), *cert. denied*, 449 U.S. 919, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980)

693 F.2d at 83 (footnote omitted) (sic throughout). The *Cal. Consolidators* Court recognized that the Sixth Circuit in *J.E. Hoetger* determined that the district court retained jurisdiction over the dispute because its "consideration of the joint employer question did not threaten to invade the Board's area of expertise." *Id.* at 83 n.2.

### III.     FAILURE TO STATE A CLAIM

**A.     Standard of Review**

Defendants bring this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiffs have failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief.  Fed. R. Civ. P. 8(a)(2).  To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards.  In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 663.  Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice.  *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

**B.      Discussion**

To the extent that this Court has subject matter jurisdiction over Plaintiffs' claims against Wright Traffic, as the only Defendant signatory to the CBAs, Plaintiffs have failed to allege a viable claim against Wright Traffic.  As discussed *supra*, Plaintiffs allege that *W.D. Wright* violated the terms of the CBAs.  (*See* Am. Compl. ¶¶ 67, 71).  Plaintiffs, however, have failed to allege any provisions of the CBAs that Wright Traffic has violated.  As such, Plaintiffs have failed to sufficiently allege a breach against Wright Traffic.

**IV.**

For the reasons stated herein, Defendants' Motions to Dismiss the Amended Complaint (ECF Nos. 32; 33) are hereby **GRANTED**.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　_/s/ Sarah D. Morrison_____
　　　　　　　　　　　　　　　　　**SARAH D. MORRISON**
　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**